UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DIANNA L. KEITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:17-cv-02568-TWP-MPB |
| ) | |
| NANCY A. BERRYHILL, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No. 25). Plaintiff Dianna L. Keith seeks judicial review of the Social Security Administration's final decision deeming her ineligible for Disability Insurance Benefits. The matter is fully briefed. (Docket No. 18; Docket No. 23; Docket No. 24.). It is recommended that the District Judge **AFFIRM** the decision of the Commissioner of the Social Security Administration finding that Plaintiff Dianna L. Keith is not disabled.

**Introduction**

Ms. Keith filed an application for Disability Insurance Benefits under Title II of the Social Security Act on August 22, 2013, alleging that she became disabled on April 12, 2013. Her claim was denied initially and upon reconsideration. At Keith's request, a hearing was held on July 14, 2015, before Administrative Law Judge (ALJ) John Pope, where Keith and Ron Malleck, a vocational expert, appeared and testified. On January 15, 2016, the ALJ issued a decision concluding that Keith was not disabled. Keith requested a review of the ALJ's decision

by the Appeals Council. The Appeals Council denied review on June 23, 2017, thereby making the ALJ's decision the final decision of the Social Security Commissioner. 20 C.F.R. § 404.981; *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). On July 31, 2017, Keith timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

### Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Plaintiff is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe. If they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined

are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and her RFC. If so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

**Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. This Court must affirm the ALJ's decision unless it lacks the support of substantial evidence or rests upon a legal error. *See, e.g.*, [Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009)](#); [42 U.S.C. § 405(g)](#). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. [Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001)](#). The ALJ—not the Court—holds discretion to weigh evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility. [Richardson v. Perales, 402 U.S. 389, 399-400 (1971)](#). Accordingly, the Court may not re-evaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See* [Butera v. Apfel, 173 F.3d 1049, 1055 (7th Cir. 1999)](#).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. [Scheck v. Barnhart, 357 F.3d 697, 700 (7th Cir. 2004)](#). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made. The ALJ must trace the path of his reasoning and connect the evidence to his findings and conclusions. [Arnett v. Astrue, 676 F.3d 586, 592 (7th Cir. 2012)](#); [Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)](#).

**Analysis**

I. **The ALJ's Sequential Findings**

The ALJ found that Keith last met the Social Security Act's insured status requirements on September 30, 2015, and had not engaged in substantial gainful activity during the period from her alleged onset date of April 12, 2013, through this date last insured—therefore, the ALJ proceeded to step two of the analysis. ([Docket No. 16-2 at ECF p. 15](#)).

At step two, the ALJ determined that Keith had severe impairments of degenerative disc disease of the cervical and lumbar spine, scoliosis, and carpal tunnel syndrome. (Docket No. 16-2 at ECF pp. 15-16).

At step three, the ALJ found that Keith's combination of impairments did not meet or medically equal the severity of one of the listed impairments. 20 C.F.R § 404, subpart P, Appendix 1. (Docket No. 16-2 at ECF p. 16).

Prior to Step four, the ALJ determined that Keith had the RFC to perform light work with the following limitations:

> [S]he can lift/carry twenty pounds occasionally, ten pounds frequently; sit six hours and stand/walk six hours in an eight-hour day; occasionally climb, balance, stoop, kneel, crouch, and crawl; and only frequent fingering.

(Docket No. 16-2 at ECF p. 16).

The ALJ concluded that Keith could perform her past relevant work as an insurance broker as it was generally performed in the national economy. (Docket No. 16-2 at ECF pp. 21-22). Thus, the ALJ did not make a Step five finding and concluded Keith was not disabled at Step four.

II. **Review of Plaintiff's Assertions of Error**

    A. **Whether the ALJ erred by not assigning weight to the treating doctors' opinions.**

Keith asserts that the ALJ failed to assign a weight to the treating doctors' opinions while improperly giving deference to non-treating, non-examining state medical review doctors. (Docket No. 18 at ECF p. 11). Keith asserts that the ALJ does not critically analyze her treating doctors or give reasons for not giving the opinions controlling weight. (Docket No. 18 at ECF p. 12). Moreover, Keith argues that the ALJ erred in assigning weight to the state agency medical

5

consultants because they did not review a significant amount of later-received records. *Id.* The Commissioner responds that Plaintiff's treating physicians did not provide any opinions regarding Plaintiff's functional limitations or the severity of her impairments, as the ALJ noted. (Docket No. 23 at ECF p. 8). Moreover, the Commissioner asserts that there is no indication the later-received medical records undermined the state agency physician's opinions, which the ALJ relied on, and that in accordance with the rulings the ALJ considered whether the state agency physician's opinions were impacted by the later-received records. *Id.*

The ALJ is required to address the opinion evidence of all the medical doctors who have either treated Plaintiff or have reviewed her records. 20 C.F.R. § 404.1527(c). Medical opinions, per the regulations, "are statements from acceptable medical sources *that reflect judgments* about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1) (emphasis added).

Keith did not cite any specific alleged treating source opinions or record citations for such opinions until her reply brief, thus one could conclude that Keith has waived her perfunctory and undeveloped argument.[1] *Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) (internal citations omitted) ("It is well established in our precedents that 'skeletal' arguments may be properly treated as waived, as may arguments made for the first time in reply briefs."); *see also* 20 C.F.R. § 404.1512(a) (Plaintiff carries the burden to demonstrate her disability).

---

[1] Dr. Huls's February 2014 treatment notes indicate that Plaintiff was "trying to get disability" and "needs [a] functional assessment," but the record contains no functional assessment by Dr. Huls. (Docket No. 16-10 at ECF pp. 15, 17).

Contrary to her opening brief where she argues that the ALJ failed to assign weight to her treating physicians' opinions, in her reply brief, Keith only argues the ALJ erred by failing to consider Dr. Patrick Doolan's opinions. ([Docket No. 24 at ECF pp. 3-4](#)). Dr. Doolan was not a treating physician, but instead an independent medical examiner hired at the request of the state agency. ([Docket No. 16-2 at ECF p. 20](#); [Docket No. 16-9 at ECF p. 62](#)). Moreover, the record citations provided in the reply brief do not constitute opinion evidence required to be weighed by the ALJ.

The portion of the ALJ's decision dedicated to Dr. Doolan's exam is as follows:

> On February 3, 2013, the claimant appeared for a physical consultative examination with Dr. Patrick Doolan, M.D., at the request of the state agency (Exhibit 9F). On examination, the claimant had a limp on the right leg, stable station, and a stead heel/toe walk and steady tandem walk (Exhibit 9F). She was able to squat to forty percent, she had a normal straight leg raise, and her strength was 5/5 with no weakness (Exhibit 9F). However, the claimant did have a reduced range of motion in the cervical and lumbar spine (Exhibit 9F). The claimant was diagnosed with a history of cervical and lumbar spine disorder, hiatal hernia, degenerative disc disease and depression. The claimant reported to Dr. Doolan that she is no longer able to work (Exhibit 9F). *Dr. Doolan did not provide an opinion regarding the claimant's physical functional limitations.*

([Docket No. 16-2 at ECF p. 20](#)) (emphasis added). While the ALJ did not discuss the weight he gave to this report, Dr. Doolan's evaluation did not include reflect his own judgments about the nature and severity of Keith's impairments. Instead, Dr. Doolan recited his medical findings. In fact, the form Dr. Doolan completed in conjunction with his examination requested a Medical Source Statement, which the form itself instructed the physician to "[p]rovide statement about what claimant can still do despite impairment(s) with respect to work-related activities . . ." ([Docket No. 16-9 at ECF p. 62](#)). To this, Dr. Doolan stated: "Patient has neck brace ion [sic] and reports she can not walk over ½ blk and can not lift or carry over 5 lbs." *Id.* Dr. Doolan's

7

medical source statement does not provide his judgment as to what the claimant can and cannot do with respect to work-related activities and instead merely recites Keith's own complaints. The ALJ correctly concluded that Dr. Doolan's report did not provide an opinion regarding the claimant's physical functional limitations and therefore this report could not be used to support specific limitations included in Plaintiff's residual functional capacity. See *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010).

Similarly, the ALJ concluded that "[t]here are no treating or examining source opinions included in the record and the weight assigned to the function report of the claimant's mother has been previously discussed above." (Docket No. 16-2 at ECF p. 21). Given that the Plaintiff has failed to provide any citations to purported opinions other than the citations to Dr. Doolan's report, discussed above, Plaintiff has not met her burden of contradicting the ALJ's analysis as to treating or examining source opinions.

Keith also argues that the ALJ improperly gave weight to the state agency medical consultant's assessment, given that Dr. Ruiz's reconsideration assessment occurred on February 4, 2014, seventeen months prior to Keith's hearing, included a statement that there was insufficient evidence to evaluate the claim, and was well-before a substantial portion of the medical evidence was on file, including the submission of her Laser Spine Institute treatment records. (Docket No. 18 at ECF p. 12).

Dr. Ruiz was the state agency physician responsible for providing a Disability Determination Explanation at the Reconsideration level. (Docket No. 16-3 at ECF p. 9). During the October 29, 2013, initial consideration, state agency physician Dr. Eskonen, conducted the review and within his "Case Analyses" commented: "clmt has not submitted daily activities questionnaire, despite third party insistence that intends to do so. clmt has not demonstrated

8

intent to pursue claim for benefits. there exists insufficient evidence to properly evaluate clmt's impairments." ([Docket No. 16-3 at ECF pp. 4-5](#)). This statement is also repeated in Dr. Eskonen's "Medically Determinable Impairments and Severity" explanation, where Dr. Esknonen also repeats that there is "insufficient evidence to evaluate the claim." ([Docket No. 16-3 at ECF pp. 5-6](#)). Dr. Eskonen did not provide an RFC assessment.

Dr. Ruiz's February 4, 2014, reconsideration evaluation does give a RFC examination and cites the specific evidence he relies upon for his conclusion, including that the claimant had normal pulses, steady and stable gait with limp on right side, could squat 40%, had some limitation of motion in the cervical and lumbar spines. ([Docket No. 16-3 at ECF p. 14](#)). Thus, while Dr. Ruiz's explanation form repeats that there was "insufficient evidence to evaluate the claim" within the "Medically Determinable Impairments and Severity" explanation—which is an entirely different section from where Dr. Ruiz conducted his RFC—it appears to be left over from Dr. Eskonen's original comments as he then provides a RFC assessment that he supports by evidence.

With regards to Dr. Ruiz, the ALJ commented:

> As for the opinion evidence, the above-assessed residual functional capacity is generally consistent with the findings of the state agency consultant at the reconsideration level (Exhibit 3A). The added restriction of frequent fingering is based on the evidence submitted after the state agency made its determination. Otherwise, the evidence received after the agency rendered its opinion does not show any significant decline the claimant's condition. Consequently, it remains consistent with the record as a whole. The State agency medical consultants' assessments are given great weight because not only were they rendered by expert medical personnel but they are consistent with the other objective medical evidence of the record and they are consistent with the claimant's alleged activities of daily living. The State agency medical consultants are well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act, as amended. The state agency medical consultants included in the

9

>record and the weight assigned to the function report of the claimant's mother has been previously discussed above.

(Docket No. 16-2 at ECF p. 21) (emphasis added).

The ALJ noted, a point that Plaintiff does not contest with any record citations, that Dr. Ruiz's opinion was consistent with the objective medical evidence and Plaintiff's daily activities. (Docket No. 16-2 at ECF p. 21); *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."). Plaintiff argues that Dr. Ruiz is employed and paid by the Disability Determination Bureau ("DDB"), in a seeming attempt to infer bias in Dr. Ruiz's findings. However, the ALJ noted that Dr. Ruiz had reviewed the medical evidence and was "well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act."). (Docket No. 16-2 at ECF p. 21); *See Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 447-48 (7th Cir. 2004) ("It is appropriate for the ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation.").

The ALJ also noted that "[t]he added restriction of frequent fingering is based on the evidence submitted after the state agency made its determination." (Docket No. 16-2 at ECF p. 21). Plaintiff is correct that Dr. Ruiz did not have the records of the Laser Spine Institute or some other treating physicians, at the time of his determination. However, Plaintiff fails to demonstrate how these subsequent medical records undermined Dr. Ruiz's opinion and ignores that the ALJ thoroughly reviewed the aforementioned evidence.

SSR 96-6p only requires an ALJ to obtain an updated expert opinion where, in the ALJ's opinion, the new evidence might change the initial opinion with regards to whether an impairment is not equivalent in severity to any impairment in the Listing of Impairments. SSR

10

96-6p[2]. Thus, SSR 96-6p's requirement as to when new evidence may impact medical equivalency, at Step three, does not extend to the ALJ's RFC evaluation. It is notable that Plaintiff has not argued error at Step three. Moreover, the ALJ considered the more recent test results at length and gave no indication that he found them inconsistent with an RFC for limited light work. He explicitly discussed the medical records from the Laser Spine Institute (Docket No. 16-2 at ECF pp. 19-20, citing Docket No. 16-8 at ECF pp. 4-64), the records from Plaintiff's primary care doctor that occurred after Dr. Ruiz's review of the medical record (Docket No. 16-2 at ECF p. 20), and the records from Midwest Pain Institute (Docket No. 16-2 at ECF p. 20). The ALJ noted that Dr. Huls's examinations revealed decreased grip strength in the right hand, with weakness of the intrinsic hand muscles, but the cranial nerves were intact. (Docket No. 16-2 at ECF p. 20). There is no evidence to suggest that the ALJ erred in his reliance on Dr. Ruiz's opinions where the ALJ spent significant time evaluating the later-received evidence and the Plaintiff failed to establish how the later-received evidence would have changed the state agency physician's assessment. *Wyotsek v. Colvin*, No. 1:12-cv-01816-JMS-MJD, 2013 WL 4479034, at *6-7 (S.D. Ind. Aug. 19, 2013) (ALJ did not err in relying on state agency psychologists' opinions, despite new evidence post-dating opinions that claimant had GAF of 50, where ALJ discussed this evidence several times and claimant failed to establish how it would have changed psychologists' assessments). Therefore, the ALJ reasonably relied on the opinion of Dr. Ruiz, the only medical source to provide an opinion regarding Plaintiff's functional limitations. *See Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) ("because Dr. Matkon was the only

---

[2] Effective March 2017, SSA replaced SSR 96-6p with a new ruling, SSR 17-2p, Evidence Needed by Adjudicators at the Hearings and Appeals Council Levels of the Administrative Review Process to Make Findings about Medical Equivalence. SSR 17-2p, 2017 WL 3928306 (March 27, 2017). The substantive aspects of SSR 17-2p do not apply retroactively, so SSR 96-6p still governs this case.

medical expert who made an RFC determination, the ALJ reasonably relied upon his opinion in formulating the hypothetical" and RFC findings).

### B. Whether the ALJ's Credibility Determination was Patently Wrong.

Keith asserts that the ALJ's credibility assessment was patently wrong, specifically, arguing that the ALJ mischaracterizes evidence and then attempts to use it as a basis for supporting his credibility determination. (Docket No. 18 at ECF p. 13).

This Court gives an ALJ's subjective symptom evaluation special deference and reverses only if it is patently wrong, because the ALJ observed the claimant's testimony at the hearing. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). An ALJ need not discredit a claimant's individual statements; instead, the ALJ need only minimally articulate the evidence that prompted her to generally distrust the claimant's account of her limitations. *See Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) ("an ALJ's credibility findings need not specify which statements were not credible"); *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992) (ALJ must only "minimally articulate reasons for crediting or rejecting evidence of disability"). If "the determination rests on objective factors or fundamental implausibilities rather than subjective considerations" like demeanor this Court has more freedom on review. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). In making a credibility finding the ALJ must evaluate the claimant's pain level, medication, treatment, daily activities, and limitations. *See* 20 C.F.R. § 404.1529(c); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

Here, the ALJ found that Keith's statements alleging more severe restrictions and her mother's third-party function report were not fully credible for several reasons. (Docket No. 16-2 at ECF p. 20). The ALJ pointed out that she first testified she never shopped in a store since her alleged onset date, stating she does all her shopping online, but then she later admitted she drives

to the store to pick-up milk. (Docket No. 16-2 at ECF p. 21). The ALJ also noted that the claimant reported a wide range of daily activities to her primary care doctor, Dr. Huls, including reporting increased pain after riding in the school bus while chaperoning her son's field trip, a 2014 report that she was caring for her two young children—ages 4 and 5—on her own all day with no one to help her, and a Spring 2014 trip to the circus. *Id.* Finally, the ALJ noted that the claimant had not followed-up on recommendations made by her treating doctor, such as physical-therapy after her surgery. *Id.*

The ALJ recognized Plaintiff's July 2015 testimony that her medications were helpful (Docket No. 16-2 at ECF p. 17); and Dr. Levine's November 2014 notation that Plaintiff's pain was moderately well-controlled on medication. (Docket No. 16-2 at ECF p. 20). *See* 20 C.F.R. § 404.1529(c)(iv) (ALJs should consider effectiveness of treatment in assessing claimant's subjective symptoms); *see also Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("And even if Denton had been taking Lexapro for depression, that would not warrant inclusion in her RFC if the prescription controlled her depression, as the evidence suggested."). The ALJ noted that, in addition to pain medication, Plaintiff underwent neck fusion surgery in August 2013 and received lumbar facet and epidural injections in late 2014 and early 2015; however, Dr. Levine, who began treating Plaintiff for pain management in November 2014, had not recommended additional surgery. (Docket No. 16-2 at ECF p. 17); *See* 20 C.F.R. § 404.1529(c)(3)(v) (ALJs should consider treatment other than medication in assessing claimant's subjective symptoms).

Plaintiff argues that the ALJ erred in relying on Plaintiff's daily activities to discount her subjective symptoms because he ignored Plaintiff's qualifying statements regarding her activities. (Docket No. 18 at ECF pp. 13-15). Specifically, Plaintiff argues that the ALJ does not explain how Plaintiff's chaperoning of her son's field trip was inconsistent with her subjective

13

complaints nor did he recognize her complaints of significantly increased pain after the bus ride; that she complained to Dr. Huls that her pain "flared significantly and lasted for several days" after going to the circus; that she testified her mother comes over three-to-four nights each week to cook dinner and help bathe the children; and that she reported she must do everything slowly, does not bathe regularly because of the pain, and cannot stand to cook. *Id.*

However, the ALJ did acknowledge that the claimant reported increased pain after riding in the school bus, that Plaintiff's mother comes over three to four times each week, and acknowledged that her medications cause sleepiness and difficulty in waking up as side effects. (Docket No. 16-2 at ECF p. 17). "ALJs are not required to discuss every piece of evidence, and that principle applies equally to a credibility assessment." *Sawyer v. Colvin*, 512 F. App'x 603, 608 (7th Cir. 2013).

Plaintiff further criticizes the ALJ's assessment because the ALJ does not explain how being able to occasionally pick-up milk equates to being dishonest about not being able to do the weekly grocery shopping. (Docket No. 18 at ECF p. 16). However, Plaintiff's attack mischaracterizes the testimony. The ALJ questioned Keith as follows at the hearing:

> Q: Okay. Do you go to the store shop?
> A: No, I can't do that. It's too much.
> Q: You never go?
> A: It's way too much.
> Q: You don't go with your mother at all?
> A: I know. It's – I've tried to do and it's just too much. The grocery shopping just is too much understanding all of that.
> Q: What about other shopping?
> A: I do it on line.

(Docket No. 16-2 at ECF p. 53). But later, as counsel questioned her, Plaintiff contradicted that she never goes shopping by stating, when explaining where she drives to, that "maybe once a week" she "go[es] in town to get maybe some milk or something." (Docket No.

14

16-2 at ECF p. 79). Thus, the ALJ's conclusion that Plaintiff contradicted herself is supported by the hearing testimony as the ALJ asked in three different questions whether the Plaintiff ever went shopping, not just grocery shopping, and Plaintiff definitively responded no each time— only to admit she did run errands as often as once a week later in her testimony.

An ALJ may not ignore a claimant's limiting qualifications with regard to her daily activities. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). That is not, however, what the ALJ did here. Although the ALJ could have discussed Keith's daily activities in more detail, he did not exaggerate Keith's testimony or Keith's statements within her medical records regarding her daily activities. The ALJ provided valid reasons to support his finding that Plaintiff's statements regarding her subjective symptoms were not entirely credible. The reviewing court may not "substitute [its] judgment for the ALJ's when considering the weight of the evidence, and [the claimant] must do more than point to a different conclusion that the ALJ could have reached to demonstrate that the credibility determination was patently wrong." *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010).

### C.  Whether the ALJ Reasonably Considered the Objective Medical Evidence

Keith argues that ALJ selectively included incomplete references to medical records to support his conclusions, i.e., that he cherry-picked the evidence. (Docket No. 18 at ECF p. 17). She specifically points to the ALJ's discussion of Dr. Sasso's x-ray; of Dr. Huls's examination; and of objective findings of severe levoscoliosis and right lateral recess narrowing at L2-3. (Docket No. 18 at ECF pp. 17-19).

This Court should affirm the ALJ's finding if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Allen v. Sullivan*, 977 F.2d 385, 389 (7th Cir. 1992). Although a mere scintilla of proof will not suffice to uphold the ALJ's findings, the standard of substantial evidence

15

requires no more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed. 2d 842 (1971). However, an ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the reviewing court to trace the path of his reasoning. *See Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). "An ALJ's failure to consider *an entire line of evidence* falls below the minimal level of articulation required." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) (emphasis added). But, that is not what happened here.

The ALJ explicitly noted that Plaintiff's May 2013 neck MRI revealed "fairly significant stenosis at C5-6 and C6-7" and her November 204 lower back MRI showed levoscoliosis. (Docket No. 16-2 at ECF p. 19, citing Docket No. 16-7 at ECF p. 19); (Docket No. 16-2 at ECF p. 20, citing Docket No. 16-11 at ECF p. 10). Moreover, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine and scoliosis, further indication he considered the evidence. (Docket No. 16-2 at ECF p. 15). While the ALJ did not explicitly address Dr. Huls's diagnosis of cervical and lumbar radiculopathy, he noted that Dr. Levine diagnosed Plaintiff with lumbar radiculopathy in November 2014. (Docket No. 16-2 at ECF p. 20; citing Docket No. 16-11 at ECF p. 6). *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002) ("The ALJ's failure to address these specific findings, however, does not render his decision unsupported by substantial evidence because an ALJ need not address every piece of evidence in his decision.").

Although Keith may disagree with the ALJ's weighing of the evidence, she fails to demonstrate that remand is warranted. *See Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996)

16

("[S]o long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits.").

In her reply brief, for the first time, Keith argues that the ALJ may have considered the objective medical evidence, but that the ALJ's analysis is "nothing more than a regurgitation of the contents of the records without cogent analysis of those records." (Docket No. 24 at ECF p. 5). Again, arguments raised for the first time in reply briefs shall be deemed waived. However, even if waiver were not appropriate, Plaintiff's argument is not persuasive. Plaintiff argues the ALJ did not even recognize Dr. Sasso recommended surgery, however this overlooks that the ALJ noted the cervical discectomy and fusion surgery was ultimately conducted by Dr. Weber on August 9, 2013. (Docket No. 16-2 at ECF p. 20). Moreover, in the ALJ's summary of several of the medical source's records, he reviewed Plaintiff's range of motion limitations, the associated pain, the decreased grip strength, amongst other physical limitations, permitting this Court to logically follow the summary of medical evidence to the ALJ's ultimate RFC finding.[3] In sum, the ALJ reasonably considered the objective medical evidence.

### D. Whether the ALJs RFC was supported by substantial evidence.

Finally, Keith argues that the ALJ erred at Step four by finding that Keith was able to perform her former work as an insurance agent because the lifting restriction he places on her is well below the thirty-five (35) pound maximum lifting she had to do to complete her previous job as an insurance agent. (Docket No. 18 at ECF p. 19). Further, Keith asserts the medical evidence of record does not support this finding because in addition to not having the residual

---

[3] Plaintiff also argued for the first time in her reply brief that Dr. Sasso's "findings are consistent with the listing level of impairments for orthopedic injuries." (Docket No. 24 at ECF p. 6). To the extent Keith attempts to argue the ALJ erred at Step 3, this argument was never raised in Plaintiff's initial brief and was only perfunctorily raised in her reply brief. Thus, the argument is waived.

17

functional capacity to perform light work, Keith's need for unexcused absence and frequent breaks makes it impossible to perform not only her past relevant work, but also any gainful employment. *Id.*

Social Security regulations provide that a claimant will be found not disabled at Step four when she is able to perform either (1) the functional demands and job duties of her past work as *generally* required by employers in the national economy or (2) the *actual* functional demands and job duties of her past work. *See* 20 C.F.R. § 404.1520(e); SSR 82-61. The Seventh Circuit has reiterated that an individual does not have to be able to return to her precise job as she used to do it. *Orlando v. Heckler*, 776 F.2d 209, 215 (7th Cir. 1985).

Here, based upon the uncontested testimony of the vocational expert, the ALJ concluded that Plaintiff could perform her past job as an insurance broker "as it is generally performed," not as it was actually performed. (Docket No. 16-2 at ECF pp. 19-20). To determine whether the claimant is capable of performing a job as it is generally performed, the Commissioner refers to the Dictionary of Occupational Titles (DOT). *Steward v. Bowen*, 858 F.2d 1295, 1301 (7th Cir. 1988); SSR 82-62. The ALJ noted that "[d]uring the hearing, the vocational expert testified the job title, exertional level, and skill level of the claimant's past work as an insurance broker as skilled and light." (Docket No. 16-2 at ECF p. 22; Docket No. 16-2 at ECF pp. 81-82). According to the vocational expert and the DOT, the insurance broker job as generally performed is a light exertional job, which corresponds with Plaintiff's RFC. (Docket No. 16-2 at ECF p. 16); *see also* DICOT 250.257-010 (G.P.O.), 1991 WL 672355. Thus, it is irrelevant that Plaintiff lifted up to thirty-five (35) pounds when she worked as an insurance broker.

Finally, Plaintiff provides no factual support or citation to record evidence to support the argument that the ALJ's Step four finding was erroneous because of Plaintiff's "need for

18

unexcused absence and frequent breaks." (Docket No. 18 at ECF p. 19). Thus, this argument is waived. See Schoenfeld v. Apfel, 237 F.3d 788, 793 (7th Cir. 2001) ("'We have held time and again that perfunctory and undeveloped arguments (even constitutional ones) are waived.'") (quoting United States v. Andreas, 150 F.3d 766, 769 (7th Cir. 1998)). "[T]he ALJ was only required to incorporate limitations that [he] found supported by the evidence." Alvarado v. Colvin, 836 F.3d 744, 751 (7th Cir. 2016). No medical source opined that Plaintiff's impairments would require unexcused absences and frequent breaks. See Schumaker v. Colvin, 632 F. App'x 861, 867-68 (7th Cir. 2015) ("Shumaker does not identify any evidence in the record that suggests greater limitations from her obesity than those identified by the ALJ"); Gambill v. Colvin, No. 14-cv-0572, 2016 WL 4163835, at *11 (N.D. Ill. Aug. 5, 2016) ("Other than his own testimony . . . Claimant cites to no other significant evidence supporting how his hearing limitations would further erode his RFC.").

## Conclusion

For the foregoing reasons, I recommend that the Court **AFFIRM** the ALJ's opinion. Any objections to this Report and Recommendation must be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1).

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 1st day of June, 2018.

_____
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.